In re LEEDY MORTGAGE COMPANY, INC. Debtor.

John P. JUDGE, Trustee

v.

RIDLEY & SCHWEIGERT, an Alabama general partnership; Edwin R. Ridley, an individual; Paul C. Schweigert, Jr., an individual; Jamison, Money, Farmer & Company, an Alabama general partnership; William D. Jamison, an individual; Hugh W. Farmer, Jr., an individual; Davis S. Burton, Jr., an individual; Charles F. Horton, an individual; Ernest E. Miles, an individual; Harold E. Phillips, an individual; Frank A. Shumate, an individual; George H. Jones, III, an individual; T. Jerry Humber, an individual; B. Jean Hunt, an individual, and Richard E. Kirkpatrick, an individual, jointly and severally.

Bankruptcy No. 83–03502K.
Misc. No. 85–0696.

United States District Court, E.D. Pennsylvania.

June 3, 1986.

---

David S. Fishbone, Keith H. Leonard, Philadelphia, Pa., for plaintiff.

Joseph A. Dworetzky, Philadelphia, Pa., for Ridley & Schweigert, Edwin R. Ridley and Paul C. Schweigert, Jr.

David B. Adams, Philadelphia, Pa., for Jamison, Money, Farmer & Co., et al.

BECHTLE, District Judge.

On April 11, 1986, this court granted defendants' motions for withdrawal of ref-

erence and transfer of adversary proceeding to the United States District Court for the Northern District of Alabama. On this occasion, the court takes the opportunity to set forth its reasons for its April 11, 1986 Order.

## FACTS

Between 1887 and October, 1979, Leedy Mortgage Company ("Leedy") was headquartered in Birmingham, Alabama. In October, 1979, Leedy moved its headquarters from Birmingham to Bala Cynwyd, Pennsylvania. Leedy, which was in the business of real estate sales and rentals, operated in a geographic area from Pennsylvania in the North, to Florida in the South, and to Texas in the West. On September 7, 1983, Leedy filed for bankruptcy under Chapter 11 of the United States Bankruptcy Act, 11 U.S.C. §§ 1101, et seq.,[1] in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Leedy's creditors, including defendants, filed claims under the Act § 501.

On August 4, 1985, Leedy's trustee in bankruptcy (the "trustee"), John P. Judge, filed this lawsuit against Leedy's accountants. One group of defendants was Ridley & Schweigert (the "Ridley firm") and its partners. The Ridley firm was Leedy's accountant for fiscal year ending April 30, 1981. The other group of defendants was Jamison, Money, Farmer & Company and its partners (the "Jamison firm"). The Jamison firm was Leedy's accountant for fiscal year ending April 30, 1982. Both firms expressed the opinion that, after examining Leedy's financial statements "in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances," the financial statements presented fairly the financial position of Leedy and results of operations and changes in financial position "in conformity with generally accepted accounting principles applied on a consist-

ent basis." Auditors' Review of the Jamison firm, August 6, 1982; Auditors' Report of the Ridley firm, July 2, 1981.

The trustee's complaint asserts three counts against defendants. The first two counts are asserted on behalf of the debtor's estate and Count III is asserted on behalf of the debtor's creditors. In Count I, the trustee alleges that defendants breached their contracts with Leedy, causing Leedy to suffer damages in excess of $14 million and forcing Leedy into bankruptcy. The trustee asserts in Count II that defendants were negligent when they audited, certified, and represented that Leedy's financial statements presented fairly Leedy's financial condition. According to the complaint, the financial statements were false and misleading. As a result of the false and misleading nature of the financial statements, the complaint states that Leedy was damaged in excess of $14 million and forced into bankruptcy. In Count III, the trustee asserts the same cause of action alleged in Count II, but the trustee asserts this claim on behalf of the creditors to the extent that they filed claims or are listed in the Statement of Financial Affairs and Schedules in the pending bankruptcy case of Leedy. The trustee seeks to recover damages incurred by the creditors as a result of defendants' gross negligence.

Shortly after the complaint was filed, defendants moved to withdraw reference of this claim from bankruptcy court and to transfer this case to the United States District Court for the Northern District of Alabama, Southern Division.

## DISCUSSION

### 1. *Withdrawal of Reference*

The United States District Court has exclusive and original jurisdiction over all cases and civil proceedings arising under Title 11 of the Bankruptcy Act. 28 U.S.C. § 1334. Cases or proceedings arising under Title 11 are referred automatically to the United States Bankruptcy Court. 28

---

1. Hereinafter, the United States Bankruptcy Act is referred to as the "Bankruptcy Act" or the "Act."

U.S.C. § 157(a). *See* Rule 1002.2 of the Local Bankruptcy Rules of the United States District Court for the Eastern District of Pennsylvania. The district court may withdraw the references to the bankruptcy court for cause shown. Cause is not defined in the Act. Courts employ a factor analysis to determine whether cause exists.

■ One factor in determining whether to withdraw reference is whether the claim is a core proceeding. 28 U.S.C. § 157. Core proceedings are matters which govern the administration of the debtor's estate. A nonexclusive list of core proceedings are set forth in 28 U.S.C. § 157(b)(2). That list provides that "[c]ore proceedings include ... counterclaims by the estate against persons filing claims against the estate...."

■ Here, clearly the trustee has asserted a counterclaim against defendants, who have filed a claim against debtor's estate. Fed.R.Civ.P. 13. Defendants' arguments to the contrary lack merit. Nevertheless, other factors here weigh heavily in favor of withdrawal of reference. The most fundamental reason is that, in spite of 28 U.S.C. § 157, the trustee's counterclaim is a matter very different from matters included in the typical administration of a bankrupt estate.

■ Unlike the matters concerning the administration of the estate, the instant action, but for the filing of the bankruptcy petition, could have been brought by Leedy against the accountants in the district court. Unlike the matters concerning the bankruptcy matter, this case could require extensive discovery. The parties in this action will have to study many volumes of written material and depose many individuals, including, at least, the thirteen individual defendants. In addition, the parties will have to hire experts to testify as to the standard of care to be employed by a reasonable accountant in Birmingham, Alabama, at the pertinent times. The trial will be lengthy and complex. It will last from two to four weeks, far longer than most proceedings in bankruptcy court. Also, unlike most bankruptcy proceedings, it will require a jury and extensive examination of documents and witnesses. At the conclusion of the evidence, the court will have to instruct the jury on the law of contract and negligence as governed by the State of Alabama. All of this contrasts with that which typically occurs before the bankruptcy court. The court believes that it is well within the mark when it says that bankruptcy courts do not commonly hear lengthy trials involving the law of contracts or negligence based on the law of a state foreign to the forum where extensive discovery and pretrial proceedings are necessary and inevitable.

In addition, the court notes that the trustee here seeks more than a mere set-off. He has asserted an affirmative claim for damages.

In brief, the trustee's claim is atypical to the matters which come generally before the trustee. Consequently, it would be very beneficial to all parties to have a district court draft the discovery schedule, resolve promptly and expertly discovery disputes, and guide this case before a jury.

For these reasons, the court granted defendants' motions to withdraw the reference for cause shown.

### 2. *Transfer of Venue*

The court turns to defendants' motions to transfer venue.

The difficulty with the trustee's position, opposing defendants' motions, is that the gravity of the trustee's complaint is in Alabama. The very core of the trustee's claim is defendants' misconduct in Alabama. That is, all of defendants' alleged misconduct, the breach of contract and the claimed accounting malpractice, occurred in Alabama. All of the accounting service performed by defendants was conducted in Alabama. Leedy's accounting and bookkeeping records were located in Alabama until they were transferred to Philadelphia following Leedy's filing for bankruptcy. Defendants' work papers were compiled and completed in Alabama. The employees

of Leedy, whom defendants interviewed in connection with the audit, were, and still are, located in Alabama. Also, before bankruptcy was filed, Leedy was incorporated in Alabama and did substantially all of its business in Alabama.

Additionally, defendants are from Alabama. Both are relatively local in the region of Alabama, as opposed to a national or even near national profile. If this case were tried in Philadelphia, it is predictable that the absence of the defendants from their practices would have a considerable, adverse impact upon their business and unrelated accounts and parties.

The court does not believe that transfer of this case is a serious burden to the trustee. The trustee cannot successfully complain that the transportation of pertinent Leedy records is an extraordinary burden on the financial condition of the estate. The bankruptcy petition was filed in Philadelphia. The trustee did not object then to having the Leedy records brought to Philadelphia from Birmingham. The trustee did not believe then that the cost of the transportation of those records was prohibitive. In fact, the trustee resisted Colonial Bank of Alabama's ("Colonial Bank") motion to transfer the bankruptcy petition, even though the bankruptcy petition could have and probably should have been filed in Birmingham in the first place. 28 U.S.C. § 1408. The court does not believe that the trustee can complain here of the cost of transferring the records back to Alabama, where they came from, is an undue depletion of the estate's assets, particularly here where the trustee seeks to recover a sizable judgment from defendants.[2] Moreover, the court does not believe that all Leedy's records must be transferred to Alabama for this trial. Only a part of the records of the bankruptcy case are necessary to litigate the claim pertaining to these two years. Additionally, the court notes that the Colonial Bank filed a complaint similar to that of the trustee's on July 20, 1984, in the Circuit Court of Jefferson County, Birmingham, Alabama. The court believes that the cost of transporting the records to Alabama by the trustee could be recouped by the trustee from Colonial Bank as well as by all of the other Leedy creditors, or shared by them to the extent that they seek to benefit directly by the trustee's lawsuit. Court assistance through appropriate pretrial and discovery Orders could be helpful here. For example, the trustee may be able to coordinate and share discovery with the parties in the Colonial Bank case, thereby saving all parties in both cases time and money. Lastly, the court notes that the trustee has determined to incur the financial cost of flying his attorney to Alabama to take defendants' depositions. The trustee apparently has determined that it would not be an undue burden on the estate to fly an attorney to Alabama to take defendants' depositions, yet he contends that it would be an undue burden here to ship several boxes of records to Alabama. The court is not convinced of the merit of the trustee's argument that to transfer records would unduly burden the estate and deplete its assets.

 Many other arguments have been raised here by the trustee. The court has considered all of them and found them to be without merit. Although the trustee chose to bring this action in Philadelphia, the trustee's choice of forum, like the choice of forum in a class action, or in a derivative action, is not entitled to great weight. Although many of Leedy's creditors, which must testify that they relied on Leedy's financial statements, are from the Middle Atlantic states, many other Leedy creditors are from the South. In addition, many of the Leedy creditors from the Middle Atlantic states are national firms and they should not be burdened if this trial takes place in Alabama. Moreover, this aspect of the trustee's case, if the trustee can assert Count III at all, *see In re D.H. Overmyer Telacasting Co., Inc.,* 56 B.R.

---

**2.** The trustee, resisting this motion, does not estimate the cost of transporting the records. The court will not speculate that the cost of transportation is so sizable as to unduly deplete the bankrupt estate.

657 (Bkrtcy.N.D.Ohio 1986), *citing Coplin, Trustee v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), can probably be proven by deposition or stipulation. Finally, this issue is not the issue at the heart of this controversy in any event. That is, the court believes that not only is the district court in Alabama the court most convenient for the parties and witnesses, it is the only court where defendants can have a trial which is consistent with traditional concepts of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). None of the defendants have any contacts with Pennsylvania. The audits of Leedy's records occurred exclusively in Birmingham. Defendants talked only to Leedy employees in Birmingham. There is no evidence that any defendant ever came to Philadelphia or even made a telephone call to Philadelphia in connection with an audit of Leedy. Clearly, on this record, but for the fact that defendants filed claims in the bankruptcy court in the Eastern District of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania would not have personal jurisdiction over any of the defendants. Since the nature of proceeding in bankruptcy in this instance vastly differs from the nature of the claim for breach of contract and accounting malpractice, as discussed above, the court believes that it would be grossly unfair to subject defendants to suit in Pennsylvania.

Accordingly, for the above reasons, on April 11, 1986, the court granted defendants' motions to withdraw the reference from the bankruptcy court and transfer venue to the United States District Court for the Northern District of Alabama, Southern Division.