In re Samuel RODDAM, Jr., Debtor.

Samuel D. RODDAM, Jr. and Ginger Roddam, Plaintiffs,

v.

METRO LOANS, INC.; Voyager Guaranty Insurance Company; and, Salli Wright, Defendants.

Bankruptcy No. 94–05173–BGC–7. Adv.P. No. 95–00348.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Feb. 21, 1996.

972

Stanton Glasscox, Oneonta, Alabama, for Plaintiff–Debtor.

Greg Dunagan, Birmingham, Alabama, for Defendant Metro Loans, Inc.

Judith Holt, Birmingham, Alabama, for Defendant Voyager.

## MEMORANDUM OPINION ON NOTICE OF REMOVAL AND MOTIONS FOR ABSTENTION AND REMAND

BENJAMIN COHEN, Bankruptcy Judge.

The matters before the Court are: (a) a *Notice of Removal* of a state court lawsuit filed by defendants Metro Loans, Inc. and Ms. Salli Wright on August 3, 1995; (b) a *Motion to Remand Removed Case* filed by Mr. Samuel D. Roddam, Jr. and Ms. Ginger Roddam on September 7, 1995; and (c) a *Motion to Remand* filed on December 4, 1995 by Mr. Max C. Pope, the Chapter 7 trustee. A hearing on all matters was held on January 3, 1996. Mr. Pope; Mr. J. Stanton Glasscox, the attorney for Mr. and Ms. Roddam; Greg Dunnigan, the attorney for Metro Loans, Inc.; and Ms. Judith Holt, the attorney for Voyager Guaranty Insurance Company, appeared. All matters were submitted on the record in the case, written and oral arguments and representations of counsel, who advised the Court that no testimony would be offered.

### I. Findings of Fact

On September 1, 1994 Samuel and Ginger Roddam filed a joint petition for relief under chapter 13 of the Bankruptcy Code. An order was entered on October 13, 1994 confirming the Roddams' chapter 13 plan.

On July 12, 1995, the Roddams filed a lawsuit in the Circuit Court of Blount County, Alabama. Their complaint alleges causes of action based on fraud, misrepresentation, negligence and wantonness, arising from events that transpired in January 1994, some seven months prior to the filing of their chapter 13 case. Metro Loans, Inc., Voyager Guaranty Insurance Company, and Salli Wright were named as defendants in that lawsuit and on August 3, 1995, Metro and Ms. Wright filed a notice of the removal of the lawsuit to the bankruptcy court.[1]

After filing the lawsuit, Mr. and Ms. Roddam divorced. Mr. Roddam moved for severance of the joint chapter 13 case and for conversion of his separate bankruptcy case to chapter 7. Mr. Roddam's motion was granted and his case was converted on October 18, 1995. Ms. Roddam remained in Chapter 13 until January 2, 1996, when her case was dismissed for failure or inability to make the payments specified in the order of confirmation.[2] Mr. Roddam's Chapter 7 proceeding is a "no asset" case and creditors have been

---

1. While not participating in the Notice of Removal, defendant Voyager Guaranty Insurance Company agrees with removal and supports the other defendants' position.

2. AmSouth Bank of Alabama, a creditor of Mr. Roddam, filed an objection to dismissal of Ms. Roddam's case. In its order dismissing the case the Court noted:

 AmSouth Bank argues that there are assets of this estate that should be preserved by the Trustee and consequently the case should not be dismissed. It appears to the Court that the assets AmSouth seeks to protect will not only be available to AmSouth if the bank's claim is realized but that the same assets are protected through the Samuel D. Roddam case, No–94–05173–BGC–7.

notified under Bankruptcy Rule 2002(e) that a dividend is not anticipated and that it is presently unnecessary to file proofs of claims.

 Although divorced, both Roddams have asked this Court, through their common counsel Mr. Glasscox, to seek remand of the lawsuit to state court pursuant to 28 U.S.C. § 1452(b), or to ask this Court to abstain from hearing the case under 28 U.S.C. § 1334(c). Mr. Pope, the trustee appointed in Mr. Roddam's Chapter 7 case, also filed a motion for remand or abstention.[3]

Of the three defendants in the state court action, only one, Metro Loans, Inc., is a creditor of Mr. and Ms. Roddam. Metro filed a fully secured proof of claim in the Roddams' chapter 13 case prior to confirmation.

## II. Conclusions of Law

### A. Jurisdiction and Abstention

Section 1334 of Title 28 confers on district courts: (a) original and exclusive jurisdiction over all cases filed under title 11 of the United States Code; (b) original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11; and, (c) in a case commenced under title 11, exclusive jurisdiction over all property of the debtor, wherever located, and of property of the bankruptcy estate. 28 U.S.C. §§ 1334(a), (b) & (e).

 A district court *may,* pursuant to 28 U.S.C. § 1334(c)(1), abstain from hearing a proceeding arising under title 11, or arising in or related to cases under title 11, when to do so is in the interest of justice, or in the interest of comity with state courts or respect for state law. A district court *must,* pursuant to 28 U.S.C. § 1334(c)(2), abstain from hearing a civil proceeding if: (a) a timely motion to abstain is made by a party

to the proceeding; (b) the proceeding is based on a state law claim or state law cause of action; (c) the proceeding is related to a case under title 11 but did not arise under title 11 or in a case under title 11; (d) the proceeding could not have been commenced in a court of the United States absent jurisdiction under section 1334; and, (e) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

### B. Removal and Remand

 Pursuant to 28 U.S.C. § 1452(a), a party may remove a claim or cause of·action in a civil action to the district court for the district where the civil action is pending, if the district court has jurisdiction over the claim or cause of action under 28 U.S.C. § 1334. The district court may remand the case on any equitable ground. 28 U.S.C. § 1452(b). Equitable grounds sufficient for remand include: (1) *forum non conveniens* ; (2) that the entire action of a bifurcated matter should be tried in the same court; (3) that a state court is better able to resolve state law questions; (4) expertise of a particular court; (5) judicial economy; (6) prejudice to the involuntarily removed party; (7) comity; and (8) the lessened possibility of an inconsistent result. *Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984) (construing the first sentence of repealed 28 U.S.C. § 1478(b), a sentence identical to section 1452(b)). The effect of remand on the administration of the bankruptcy estate must also be considered.[4]

### C. Congressional Policy Favoring Abstention and Remand

 Sections 1452(b) and 1334(c) are kindred statutes. Section 1452(b) favors comity and the resolution of state law questions by state courts, as does section

Proceeding No. 32. The asset of particular interest to AmSouth is the plaintiffs' pending lawsuit.

**3.** While the parties did not entitle their pleadings "motions for remand or abstention" the clear substance of the motion is to have this Court either remand the case to state court or to abstain from hearing the case forcing the matter back to the state court; consequently this Court considers the pleadings filed as motions for remand or abstention for purposes of the mandatory abstention provisions of 28 U.S.C.

§ 1334(c)(2). These mandatory abstention provisions require the filing of a motion by a party. A court may raise the issue of discretionary abstention *sue sponte* pursuant to 28 U.S.C. § 1334(c)(1).

**4.** *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991); *In re Walsh,* 79 B.R. 28, 29 (D.Nev.1987); *Allen County Bank & Trust Co. v. Valvmatic Int'l Corp.,* 51 B.R. 578, 582 (N.D.Ind.1985); *In re Shop & Go, Inc.,* 124 B.R. 915, 919 (Bankr.M.D.Fla.1991).

1334(c)(1). Section 1334(c) encourages, and in certain cases, requires "federal courts to allow state courts to hear state law matters when the only basis for federal jurisdiction is § 1334(b)." *Thomasson v. AmSouth Bank,* 59 B.R. 997, 1002 (N.D.Ala.1986). "Section 1334(c) expresses a strong congressional desire that in respect to non-core proceedings the federal courts should not rush to usurp the traditional precincts of the state courts." *Cook v. Griffin,* 102 B.R. 875, 877 (N.D.Ga. 1989). Together, sections 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of section 1334(b) and the litigation can be timely completed in state court. Because the statutes are similar in purpose and spirit, circumstances which weigh in favor of discretionary abstention or

dictate mandatory abstention under the subsections of section 1334(c), likewise weigh in favor of or constrain remand under section 1452(c).[5]

### D. Mr. Roddam's Cause of Action

#### (1) Abstention

A bankruptcy court may abstain from hearing a particular proceeding "arising under" title 11 of the United States Code or "arising in" or "related to" a case under title 11 of the United States Code. The particular proceeding before this Court is a proceeding "related to" a case under title 11. Mr. Roddam's state law cause of action is property of his bankruptcy estate. Such a cause of action based on prepetition events is, for jurisdictional purposes, a proceeding "related to" a case under title 11, and not a proceeding "arising under" title 11 or "arising in" a case under title 11.[6] Thus jurisdiction emanates from 28 U.S.C. § 1334(b), the original,

---

5. *Seale v. Owens & O–M Management Group, Inc.,* 134 B.R. 181, 185 (E.D.La.1991); *O'Rourke v. Cairns,* 129 B.R. 87, 90 (E.D.La.1991); *In re Micro Design, Inc.,* 120 B.R. 363, 366 (E.D.Pa. 1990); *Marshall v. Michigan Dep't of Agric.,* 118 B.R. 954, 967 (W.D.Mich.1990); *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 494 (E.D.La.1990); *Cook v. Griffin,* 102 B.R. 875, 877 (N.D.Ga.1989); *In re Chiodo,* 88 B.R. 780, 785 (W.D.Tex.1988); *Thomasson v. AmSouth Bank,* 59 B.R. 997, 1002 (N.D.Ala.1986); *In re Shop & Go, Inc.,* 124 B.R. 915, 920 n. 4 (Bankr.M.D.Fla. 1991).

6. Mr. Roddam's state law cause of action is property of his bankruptcy estate. Such a cause of action based on prepetition events is, for jurisdictional purposes, a proceeding "related to" a case under Title 11, and not a proceeding arising under title 11 or arising in a title 11 case. *In re Charter Co.,* 913 F.2d 1575, 1577 (11th Cir.1990). *See also In re Orion Pictures Corp.,* 4 F.3d 1095, 1102 (2nd Cir.1993); *Beard v. Braunstein,* 914 F.2d 434, 443 (3rd Cir.1990); *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990); *In re Burger Boys, Inc.,* 183 B.R. 682, 687 (S.D.N.Y.1994); *In re White,* 172 B.R. 841, 844 (S.D.Miss.1994); *In re Durso Supermarkets, Inc.,* 170 B.R. 211, 214 (S.D.N.Y.1994); *Williams v. Chism,* 164 B.R. 735, 736 (N.D.Miss. 1994); *In re Baldwin Park Inn Assocs.,* 144 B.R. 475, 481 (C.D.Cal.1992); *Seale v. Owens & O–M Management Group, Inc.,* 134 B.R. 181, 184 (E.D.La.1991); *Lone Star Indus., Inc. v. Liberty Mut. Ins.,* 131 B.R. 269, 272 (D.Del.1991); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 408 (S.D.N.Y.1991); *In re J.T. Moran Fin. Corp.,* 124 B.R. 931, 939 (S.D.N.Y. 1991); *In re Delaware & Hudson Ry. Co.,* 122

B.R. 887, 894 (D.Del.1991); *In re Vylene Enters, Inc.,* 122 B.R. 747, 753 (C.D.Cal.1990); *In re New York City Shoes, Inc.,* 122 B.R. 668, 672 (E.D.Pa.1990); *In re Haugen,* 120 B.R. 124. 126 (D.N.D.1990); *In re Marshall,* 118 B.R. 954, 959 (W.D.Mich.1990); *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 495 (E.D.La.1990); *In re Second Pine, Inc.,* 107 B.R. 48, 49 (E.D.Pa. 1989); *Manley Truck Line, Inc. v. Mercantile Bank of Kansas City,* 106 B.R. 696, 697 (D.Kan. 1989); *In re Marine Iron & Shipbuilding Co.,* 104 B.R. 976, 979 (D.Minn.1989); *Borintex Mfg. Corp. v. Banco Gubernamental de Fomento Para Puerto Rico,* 102 B.R. 8, 9 (D.P.R.1989); *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.,* 97 B.R. 905, 907 (N.D.Ill.1989); *In re M.S.V., Inc.,* 97 B.R. 721, 725 (D.Mass.1989); *In re Quality Care Medical Equip. Co., Inc.,* 92 B.R. 117, 122 (E.D.Pa.1988); *Crossley v. Lieberman,* 90 B.R. 682, 690 (E.D.Pa.1988); *In re Chiodo,* 88 B.R. 780, 782 (W.D.Tex.1988); *Kadel v. Thompson,* 84 B.R. 878, 879 (N.D.Ga.1988); *Lower Brule Const. Co. v. Sheesley's Plumbing & Heating Co.,* 84 B.R. 638, 643 (D.S.D.1988); *In re Landbank Equity Corp.,* 77 B.R. 44, 47 (E.D.Va.1987); *In re Global Intern. Airways Corp.,* 75 B.R. 804, 806 (W.D.Mo. 1987); *In re Nanodata Computer Corp.,* 74 B.R. 766, 769 (W.D.N.Y.1987); *M. & E. Contractors, Inc. v. Kugler–Morris Gen. Contractors, Inc.,* 67 B.R. 260, 262 (N.D.Tex.1986); *In re Candelero Sand & Gravel, Inc.,* 66 B.R. 903, 907 (D.P.R. 1986); *In re Sweeney,* 49 B.R. 1008, 1011 (N.D.Ill.1985); *In re Ven–Mar Intern., Inc.,* 166 B.R. 191, 193 (Bankr.S.D.Fla.1994); *In re Luis Elec. Contracting Corp.,* 165 B.R. 358, 361 (Bankr.E.D.N.Y.1992); *In re Hedged–Investments Associates, Inc.,* 163 B.R. 841, 844 (Bankr.D.Col. 1994); *In re Bennett,* 154 B.R. 126, 133 (Bankr. N.D.N.Y.1992); *In re Bowen Corp. v. Security*

but not exclusive jurisdiction of bankruptcy courts over all civil proceedings in cases filed under title 11. Consequently, while this Court has exclusive jurisdiction of the bankruptcy case filed in this Court, this Court does not have exclusive jurisdiction over the civil proceedings related to that case. Jurisdiction lies equally with the state court.[7]

In its attempt to determine whether abstention is appropriate in this matter, this Court considered the factors listed above and noted below. In the context of the facts of this case, those factors weigh in favor of abstention, both discretionary and mandatory.

### (a) 28 U.S.C. § 1334(c)(1)

### Discretionary Abstention

■■■■■ The Court finds that the circumstances of this case militate in favor of discretionary abstention under 28 U.S.C. § 1334(c)(1).[8] The issues in Mr. Roddam's

---

*Pacific Bank Idaho,* 150 B.R. 777, 783 (Bankr.D.Idaho, 1993); *In re Peter J. Schmitt Co., Inc.,* 150 B.R. 556, 559 (Bankr.D.Del.1993); *In re Lyons Transp. Lines, Inc.,* 150 B.R. 15, 16 (Bankr.W.D.Pa.1993); *In re Baltic Assocs., L.P.,* 149 B.R. 93, 94 (Bankr.E.D.Pa.1993); *In re Olympia Holding Corp.,* 148 B.R. 56, 58 (Bankr.M.D.Fla.1992); *In re Total Technical Servs, Inc.,* 142 B.R. 96, 98 (Bankr.D.Del.1992); *In re Mec Steel Bldgs., Inc.,* 136 B.R. 606, 609 (Bankr.D.Puerto Rico 1992); *In re Nationwide Roofing and Sheet Metal, Inc.,* 130 B.R. 768, 775 (Bankr.S.D.Ohio 1991); *In re Shop & Go, Inc.,* 124 B.R. 915, 917 (Bankr.M.D.Fla.1991); *In re TVR of Am., Inc.,* 123 B.R. 159, 162 (Bankr. D.Conn.1991); *In re Highway Equip. Co.,* 120 B.R. 910, 913 (Bankr.S.D.Ohio 1990); *In re Altchek,* 119 B.R. 31, 34 (Bankr.S.D.N.Y.1990); *In re Colbert,* 117 B.R. 51, 53 (Bankr.D.Conn.1990); *In re Southwinds Assocs., Ltd.,* 115 B.R. 857, 859 (Bankr.W.D.Pa.1990); *In re Lee Way Holding Co.,* 104 B.R. 881, 885 (Bankr.S.D.Ohio 1989); *In re THB Corp.,* 94 B.R. 797, 799 (Bankr. D.Mass.1988); *In re Wm. S. Newman Brewing Co., Inc.,* 87 B.R. 236, 239 (Bankr.N.D.N.Y. 1988); *In re World Solar Corp.,* 81 B.R. 603, 607 (Bankr.S.D.Cal.1988); *In re Astrocade,* 79 B.R. 983, 988 (Bankr.S.D.Ohio 1987); *In re Freudenmann,* 76 B.R. 600, 602 (Bankr.S.D.Tex.1987); *In re Yobe,* 75 B.R. 873, 875 (Bankr.W.D.Pa. 1987); *In re Tobler Transfer, Inc.,* 74 B.R. 373, 375 (Bankr.C.D.Ill.1987); *In re STN Enters., Inc.,* 73 B.R. 470, 481 (Bankr.D.Vt.1987); *In re Northeast Dairy Co-op. Fed'n, Inc.,* 72 B.R. 663, 675 (Bankr.N.D.N.Y.1987); *Funding Sys. Asset Management Corp. v. Minnesota Min. & Mfg. Co.,* 72 B.R. 595, 598 (Bankr.W.D.Pa.1987); *In re Earle Indus., Inc.,* 72 B.R. 131, 133 (Bankr.E.D.Pa. 1987); *In re Epi–Scan, Inc.,* 71 B.R. 975, 979 (Bankr.D.N.J.1987); *In re Earle Indus., Inc.,* 71 B.R. 919, 921 (Bankr.E.D.Pa.1987); *In re P & P Oilfield Equip., Inc.,* 71 B.R. 621, 623 (Bankr. D.Col.1987); *In re Athos Steel and Aluminum, Inc.,* 71 B.R. 525, 534 (Bankr.E.D.Pa.1987); *In re Martin Specialty Vehicles, Inc.,* 71 B.R. 221, 224 (Bankr.D.Mass.1987); *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 166 (Bankr. E.D.N.Y.1986), *aff'd,* 1987 WL 47763 (E.D.N.Y. 1987); *In re World Fin. Servs. Ctr., Inc.,* 64 B.R. 980, 987 (Bankr.S.D.Cal.1986); *In re Counts,* 54 B.R. 730, 735 (Bankr.D.Col.1985); *Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229, 232 (Bankr.D.Col.1985); *In re Maislin Indus., U.S., Inc.,* 50 B.R. 943, 949 (Bankr.E.D.Mich.1985); *In re American Energy, Inc.,* 50 B.R. 175, 178 (Bankr.D.N.D.1985); *In re Southern Indus. Banking Corp.,* 49 B.R. 811, 813 (Bankr.E.D.Tenn. 1985); *In re Morse Elec. Co.,* 47 B.R. 234, 238 (Bankr.N.D.Ind.1985).

**7.** This Court's jurisdiction over this particular cause of action does not issue from section 1334(e), which must be interpreted in light of *Northern Pipeline v. Marathon Pipe Line,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) to exclude a proceeding wherein there exists a bona fide dispute under state law as to liability. *Marshall v. Michigan Dep't of Agric.,* 118 B.R. 954, 962 (W.D.Mich.1990). Section 542 provides the means for obtaining possession of property of the bankruptcy estate. A proceeding for turnover of estate property is denominated a core proceeding by 28 U.S.C. § 157(b)(2)(E). An unliquidated, disputed state law cause of action, however, is a non-core, related proceeding and is not the proper subject of a turnover proceeding. *In re Charter Co.,* 913 F.2d 1575, 1579 (11th Cir.1990). "Clearly, Congress envisioned the turnover provision of § 542 of the Code, 11 U.S.C. § 542 (1988), to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *Id.*

**8.** Factors to be evaluated in determining whether discretionary abstention is appropriate include: (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the pro-

lawsuit relate only to state law. Jurisdiction over the lawsuit resides in this Court solely by virtue of section 1334(b). But for Mr. Roddam's bankruptcy, the lawsuit could not have been commenced in either the bankruptcy court or the district court. The lawsuit is not dependent upon, and does not require the application of bankruptcy law.

Trial of the lawsuit in state court will not adversely impede or impact the administration of Mr. Roddam's bankruptcy case or estate. The only potential impact of the lawsuit on the bankruptcy estate of Mr. Roddam will be that, if a recovery is had, creditors may receive a dividend, where as things stand now, they will not. To receive the proceeds of any recovery had by Mr. Roddam, his bankruptcy trustee, Mr. Pope, needs only to await the outcome of the lawsuit. Mr. Pope is not disadvantaged or required to do anything more if the case proceeds in state court and acquires no advantage if the case remains in this court, as evidenced by the fact that he supports remand of the lawsuit.[9] Furthermore, any anticipated recovery by Mr. Roddam's creditors will not be delayed by trial of the lawsuit in state court, since the parties agree that resolution of the lawsuit should take about a year regardless of whether it is tried in the district court or the state court.

▇ A jury trial has been demanded. This Court has only "related to" jurisdiction. Mr. Roddam does not consent to trial by jury in the bankruptcy court. "Demands for jury trials in non-core proceedings have been considered a sufficient ground for an equitable remand." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 409 (S.D.N.Y.1991).[10] The right to jury trial also weighs in favor of discretionary abstention.[11] Because Mr. Roddam does not consent to a trial by jury in this Court, this Court must, if the case is not remanded, hear and dispose of all preliminary matters and then transfer the matter to the district court once it becomes ready for trial. *City Fire Equip. Co. v. Ansul Fire Protection Wormald U.S., Inc.,* 125 B.R. 645, 650 (N.D.Ala.1989). A judge in a state court trial will have the advantage of hearing preliminary motions and matters, and thus will be intimately familiar with the factual and legal issues involved and then will be better able to supervise the trial of those factual issues and to resolve those legal issues at trial.

For the reasons expressed above, the Court find that discretionary abstention is appropriate in this matter.[12]

ceeding of non-debtor parties. *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir.1990) (citing *In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)).

9. The Trustee must file an application for employment of the attorney for the plaintiffs, or some other attorney, as special attorney pursuant to 11 U.S.C. § 327 and Fed.R.Bankr.P. 2016 and that application must be approved by the Court.

10. *See also Lone Star Indus., Inc. v. Liberty Mut. Ins.,* 131 B.R. 269, 275 (D.Del.1991); *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 495 (E.D.La.1990); *In re Continental Holdings, Inc.,* 158 B.R. 442, 445 (Bankr.N.D.Ohio 1993); *In re Baltic Assocs., L.P.,* 149 B.R. 93, 95 (Bankr. E.D.Pa.1993); *Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229, 235 (Bankr.D.Col.1985).

11. *See Williams v. Chism,* 164 B.R. 735, 737 (N.D.Miss.1994); *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 495 (E.D.La.1990); *In re Luis Elec. Contracting,* 165 B.R. 358, 368 (Bankr.E.D.N.Y.1992); *In re Bowen Corp., Inc. v. Security Pacific Bank Idaho,* 150 B.R. 777, 784 (Bankr.D.Idaho 1993); *In re Nationwide Roofing & Sheet Metal, Inc.,* 130 B.R. 768, 780 (Bankr. S.D.Ohio 1991); *In re Shop & Go, Inc.,* 124 B.R. 915, 920 (Bankr.M.D.Fla.1991).

12. The following courts have found discretionary abstention appropriate when faced with circumstances like those presented in this case. *In re Durso Supermarkets, Inc.,* 170 B.R. 211 (S.D.N.Y. 1994); *Williams v. Chism,* 164 B.R. 735 (N.D.Miss.1994); *In re Tarkio College,* 137 B.R. 34 (W.D.Mo.1992); *In re Haugen,* 120 B.R. 124 (D.N.D.1990); *In re Marine Iron & Shipbuilding Co.,* 104 B.R. 976 (D.Minn.1989); *Kadel v. Thompson,* 84 B.R. 878 (N.D.Ga.1988); *In re Stephen Smith Home for the Aged, Inc.,* 80 B.R. 678 (E.D.Pa.1987); *In re Landbank Equity Corp.,* 77 B.R. 44 (E.D.Va.1987); *In re Nanodata Computer Corp.,* 74 B.R. 766 (W.D.N.Y.1987); *In re Sweeney,* 49 B.R. 1008 (N.D.Ill.1985); *In re Ven-Mar Int'l, Inc.,* 166 B.R. 191 (Bankr.S.D.Fla. 1994); *In re Luis Elec. Contracting Corp.,* 165 B.R. 358 (Bankr.E.D.N.Y.1992); *In re Continental Holdings, Inc.,* 158 B.R. 442 (Bankr.N.D.Ohio 1993); *In re Total Technical Servs., Inc.,* 142 B.R. 96 (Bankr.D.Del.1992); *In re Nationwide Roofing & Sheet Metal, Inc.,* 130 B.R. 768 (Bankr. S.D.Ohio 1991); *In re Yobe,* 75 B.R. 873 (Bankr. W.D.Pa.1987); *In re Epi–Scan, Inc.,* 71 B.R. 975 (Bankr.D.N.J.1987); *In re World Fin. Servs., Inc.,* 64 B.R. 980 (Bankr.S.D.Cal.1986); *In re Counts,* 54 B.R. 730 (Bankr.D.Col.1985); *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.D.N.D.1985).

At least one court believes that, "abstention under § 1334(c), be it mandatory or discretion-

## (b) 28 U.S.C. § 1334(c)(2)

### Mandatory Abstention

 This Court finds that 28 U.S.C. § 1334(c)(2) requires this Court to abstain from hearing the lawsuit.[13] All of the criteria for mandatory abstention have been met.

ary, has no application in the context of a removed action." *In re Branded Products, Inc.*, 154 B.R. 936 (Bankr.W.D.Tex.1993) (reasoning that once the action is removed from the State Court, that there is no longer any state court action for a federal court to abstain from).

**13.** *See In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y.1994); *Balcor/Morristown Ltd. v. Vector Whippany Assocs.*, 181 B.R. 781 (D.N.J.1995); *In re Unanue–Casal*, 164 B.R. 216 (D.P.R.1993), *aff'd sub. nom. Goya Foods, Inc. v. Unanue–Casal*, 32 F.3d 561 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995); *In re Baldwin Park Inn Assocs.*, 144 B.R. 475 (C.D.Cal.1992); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y.1991); *Borintex Mfg. Corp. v. Banco Gubernamental de Fomento Para Puerto Rico*, 102 B.R. 8 (D.P.R.1989); *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.*, 97 B.R. 905 (N.D.Ill.1989); *In re Chiodo*, 88 B.R. 780 (W.D.Tex.1988); *In re Perry*, 86 B.R. 388 (E.D.Pa.1988); *In re Candelero Sand & Gravel, Inc.*, 66 B.R. 903 (D.P.R.1986); *In re Bowen Corp., Inc. v. Security Pacific Bank Idaho*, 150 B.R. 777 (Bankr.D.Idaho 1993); *In re P & P Oilfield Equip., Inc.*, 71 B.R. 621 (Bankr.D.Col. 1987); *In re Martin Specialty Vehicles, Inc.*, 71 B.R. 221 (Bankr.D.Mass.1987).

**14.** A core proceeding includes "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). The fact that one of the defendants, Metro Loans, filed a proof of claim during the pendency of the Roddams' Chapter 13 case, however, does not require that the Roddams' lawsuits be tried in this Court or in the federal district court. Even if Mr. Roddam's lawsuit against Metro was a "core" proceeding, the presence of defendants over which this Court has only "related to" jurisdiction, as well as Ms. Roddam, over whom this Court has no jurisdiction, as well as the prevalence of state law claims and issues, still requires discretionary abstention under 1334(c)(1) and equitable remand under 1452(b).

Indeed, at least under the peculiar circumstances of this case, the fact that Metro filed a proof of claim in the Chapter 13 case does not mean that the debtor's lawsuit against Metro is a "core" proceeding under section 157(b)(2)(C). First of all, the present Chapter 7 proceeding is a "no asset" case, which means that there are no non-exempt assets in the bankruptcy estate available for distribution to creditors. There presently is no bankruptcy estate, but for the expectancy represented by Mr. Roddam's disputed cause of action. Whether there will be assets available for distribution to creditors is a matter of conjec-

Timely motions were filed for remand or abstention by Mr. Roddam and by Mr. Roddam's bankruptcy trustee. The lawsuit is based on a state law cause of action. The lawsuit is related to a bankruptcy case but did not arise in a bankruptcy case or otherwise arise under title 11.[14] The lawsuit could

ture and speculation, and depends entirely on the success of Mr. Roddam's lawsuit. Since there is presently no bankruptcy estate to divide, creditors are not required to file proofs of their claims and have been notified under Bankruptcy Rule 2002(e) that it is unnecessary to file proofs of claims. If no recovery is had by Mr. Roddam in his lawsuit, the filing of a proof of claim will remain unnecessary. Since there is no bankruptcy estate, for all practical purposes, how can Metro's claim properly be labeled a claim "against the estate" for purposes of section 157(b)(2)(C)?

Second, Metro's claim is, on its face, fully secured under 11 U.S.C. § 506(a) and would not entitle Metro to participate in a distribution of property of the estate as an unsecured creditor under 11 U.S.C. § 726(a). If Metro cannot, by virtue of its filed proof of claim, participate in a distribution of property of the estate, how can the proof of claim accurately be deemed a claim "against the estate" for purposes of section 157(b)(2)(C)? It would be ironic if Metro could avoid remand by virtue of section 157(b)(2)(C), which presupposes a claim against the bankruptcy estate, by relying on a proof of claim that would not allow it to participate in a distribution of the bankruptcy estate.

Third, the debtor does not dispute the validity of Metro's claim and has not objected to the allowance of Metro's claim. In fact, Mr. Roddam has consented to relief from the automatic stay to allow Metro to proceed under state law to recover its collateral. The allowance or disallowance of Metro's claim is not at issue. Section 157(b)(2)(C), therefore, would not serve to vitiate the debtor's or trustee's absolute right to a jury trial on the state law claims against Metro. The decision in *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2nd Cir.1993) is on point. In that case, the Chapter 7 bankruptcy trustee filed suit, based on state law causes of action arising from prepetition events, against a creditor which had filed a proof of claim against the bankruptcy estate. The Second Circuit rejected the notion that the trustee was not entitled to a jury trial under section 157(b)(2)(C) because the creditor had filed a proof of claim. The court reasoned as follows:

Resolution of the Trustee's action is not required in order to determine whether to allow CNB's claim as a creditor in the bankruptcy proceeding. The Trustee asks for money damages to compensate the estate for the destruction of the debtor's business. If he wins, the estate is enlarged, and this may affect the amount the Bank and its fellow creditors ultimately recover on their claims, but it has no effect whatever on the allowance of the Bank's

claims. Thus, a court could allow the Bank's claim before hearing argument on the Trustee's complaint, and this chronology would be both logical and consistent with the Bankruptcy Code.

This situation differs from those treated in some leading Supreme Court cases relied on by the Bank. In both *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam), *reh'g denied*, 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991), the issue was whether the trustee may void a preferential transfer without a jury trial. Under the Bankruptcy Code a court must disallow "any claim of any entity from which property is recoverable" because of a preferential transfer or fraudulent conveyance. 11 U.S.C. § 502(d). Thus, before a claim may be allowed, a court must resolve any preference issues that the trustee might raise.

In denying each respective creditor a jury trial both the Langenkamp and Katchen Courts referred to the process of allowing and disallowing claims. *See* 498 U.S. at 43, 111 S.Ct. at 331; 382 U.S. at 336, 86 S.Ct. at 476. The Bank argues that this process is triggered as soon as a proof of claim is filed. We agree that the filing of a proof of claim is a necessary condition—the claims-allowance process can hardly begin before a claim is made—however, it is not a sufficient condition. For instance, 28 U.S.C. § 157(b)(5) requires bankruptcy litigants to try any personal injury or wrongful death action in the district court. This strongly suggests that these litigants are entitled to a jury trial in such an action even after a proof of claim has been filed in bankruptcy court. The very phrase "claims-allowance process" suggests that the resolution of the dispute in which a jury trial is sought must affect the allowance of the creditor's claim in order to be part of that process. A preference action does so; lender liability actions generally do not. Therefore suits like the Trustee's action in this case which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process.

988 F.2d at 1327. In *Germain*, the court determined that the trustee had a right to a jury trial on state law claims even if the matter could be characterized as a "core" proceeding. Faced with similar circumstances, the district court in *In re Chiodo*, 88 B.R. 780 (W.D.Tex.1988) determined that the debtor's lawsuit was not a "core" proceeding, even if the defendant creditor had filed a proof of claim, where the validity of the claim was not disputed and the allowance or disallowance of the claim was not at issue. The court stated:

Nevertheless, the Bank contends that this is a core proceeding because it has filed a Proof of Claim for the amounts due under the real estate lien note that is the basis for the Bank's counterclaim. In determining core or related status, this Court must look to the substance as well as the form of the proceeding. A review of the bankruptcy case docket sheet shows that the Debtor has not filed an objection to the Bank's proof of claim. Additionally, the Plaintiffs' answers to the counterclaim state that the nothing is due under the note because, pursuant to the complaint, the Bank is liable for sums in excess of the amount of the note. The Court interprets these pleadings as not disputing the validity of the Bank's claim under the note; the Debtor here asserts that a successful conclusion of this proceeding will offset the amount due under the note. Thus, the Court concludes that this proceeding is not a proceeding to allow or disallow a claim against the estate as that phrase is used in 28 U.S.C. sec. 157(b)(2)(B). The Court concludes that this is an otherwise related proceeding governed by section 157(c)(1).

88 B.R. at 783. *See also In re T.R. Paris & Family, Inc.*, 89 B.R. 760, 765 (Bankr.S.D.Ill. 1988).

In summary, to find that a creditor, by filing a fully secured proof of claim in a Chapter 13 case, implicitly consented to trial of a lawsuit brought by the debtor after confirmation in the bankruptcy court as a core proceeding without a jury, after the case has been converted to a "no asset" Chapter 7, would be quite a stretch under even the most generous interpretation of *Northern Pipeline*. And while Metro may now consent to trial in the bankruptcy court, it cannot, by that consent, convert a "related" proceeding into a "core" proceeding, so as to avoid the mandatory abstention provisions of section 1334(c)(2) or the debtor's or trustee's right to a jury trial. The resemblance of Mr. Roddam's lawsuit against Metro to a true "core proceeding" envisioned under section 157(b)(2)(C) is, at best, slight. Courts have declined to label a debtor's prepetition lawsuit as "core" even after a creditor has filed a proof of claim, under circumstances much less tenuous than those presented in the present case. *In re Castlerock Properties*, 781 F.2d 159, 161–162 (9th Cir.1986); *In re Durso Supermarkets, Inc.*, 170 B.R. 211, 214 (S.D.N.Y.1994); *In re Unanue–Casal*, 164 B.R. 216, 221 (D.P.R. 1993), *aff'd sub. nom.*, *Goya Foods, Inc. v. Unanue–Casal*, 32 F.3d 561 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995); *In re New York City Shoes, Inc.*, 122 B.R. 668, 672 (E.D.Pa.1990); *In re Chiodo*, 88 B.R. 780, 783 (W.D.Tex.1988); *In re Nanodata Computer Corp.*, 74 B.R. 766, 770–771 (W.D.N.Y.1987); *In re Miramar Resources, Inc.*, 176 B.R. 45, 54 (Bankr.D.Col. 1994); *In re Total Technical Servs., Inc.*, 142 B.R. 96, 98 (Bankr.D.Del.1992); *In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768, 776 (Bankr.S.D.Ohio 1991); *In re Naugatuck Dairy Ice Cream Co.*, 106 B.R. 24, 27–28 (Bankr.D.Conn.1989); *In re T.R. Paris & Family, Inc.*, 89 B.R. 760, 765 (Bankr.S.D.Ill.1988); *In re Turner*, 70 B.R. 486, 489–490 (Bankr. D.Mont.1987); *In re Leedy Mortgage Co.*, 62 B.R. 303, 306 (Bankr.E.D.Pa.1986); *Zweygardt v. Colorado Nat'l Bank of Denver*, 52 B.R. 229, 234 (Bankr.D.Col.1985); *In re Illinois–California Express, Inc.*, 50 B.R. 232, 239 (Bankr.

not have been commenced in either the district court or bankruptcy court absent 28 U.S.C. § 1334(b). The lawsuit has been commenced in a state court of appropriate jurisdiction. Because the lawsuit can be tried no quicker in this Court than it can in the state court, the conclusion is unavoidable that the lawsuit "can be timely adjudicated" in the state court.

### (2) Remand

■■■■ The presence of factors suggesting discretionary abstention pursuant to 1334(c)(1) and factors requiring mandatory abstention under 1334(c)(2) provides ample equitable grounds for remand of the lawsuit to state court. "[T]he considerations underlying discretionary abstention and remand are the same." *Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 494 (E.D.La. 1990). "[I]t is clear that the provisions for mandatory abstention are strong factors suggesting equitable remand under § 1452(b)." *Cook v. Griffin*, 102 B.R. at 877. The presence of facts supporting abstention, when coupled with related considerations of comity and preference for the resolution of state law questions by state courts, implied in section 1452(b), "tips the scales of equity in favor of remanding this case." *Thomasson v. AmSouth Bank*, 59 B.R. at 1002. The fact that no hardship will result to any party if the case is tried in state court lends additional support for returning the case to state court. Based on the facts in this case, the conclusions reached above in regards to abstention, and after considering the factors that relate to remand and removal, the Court finds, pursuant to section 1452(b), that Mr. Rod-

dam's lawsuit must be remanded to the state court for trial.[15]

### E. Ms. Roddam's Cause of Action

#### (1) Inappropriate Removal

■■■■ Ms. Roddam's lawsuit must be remanded because it was not a proper subject of removal. As indicated before, Ms. Roddam's bankruptcy case was dismissed on January 2, 1996. Ordinarily, the dismissal of a bankruptcy case will result in the dismissal of all pending adversary proceedings. However, based on considerations of judicial economy, fairness and convenience to the litigants, and the degree of difficulty of the legal issues involved, a bankruptcy court may, by virtue of 11 U.S.C. § 349(a), alter the normal effects of the dismissal of a bankruptcy case by retaining jurisdiction over an adversary proceeding after the underlying bankruptcy case has been dismissed. *In re Morris*, 950 F.2d 1531, 1535 (11th Cir.1992). In *In re Morris*, the adversary proceeding had been pending for over four years and was ready for trial when the underlying bankruptcy case was dismissed. Under those circumstances, the Eleventh Circuit approved retention by the bankruptcy court of jurisdiction over the adversary since to do otherwise would result in the waste of judicial resources already expended in preparing the adversary for trial, and because to do otherwise would be unfair to the parties as they would be forced to begin again in another forum. In contrast, Ms. Roddam's lawsuit has only been pending six months, and because of the removal of the suit to this Court

D.Col.1985). *Cf. In re Yagow*, 53 B.R. 737, 739 (Bankr.D.N.D.1985) (debtor's counterclaim to creditor's nondischargeability complaint was not core proceeding despite the language of section 157(b)(2)(C)).

15. *See Balcor/Morristown Ltd. v. Vector Whippany Assocs.*, 181 B.R. 781 (D.N.J.1995); *In re Baldwin Park Inn Assocs.*, 144 B.R. 475 (C.D.Cal. 1992); *Seale v. Owens & O–M Management Group, Inc.*, 134 B.R. 181 (E.D.La.1991); *Lone Star Indus., Inc. v. Liberty Mut. Ins.*, 131 B.R. 269 (D.Del.1991); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y.1991); *Marshall v. Michigan Dep't of Agric.*, 118 B.R. 954 (W.D.Mich.1990); *Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487 (E.D.La.1990); *Cook v. Griffin*, 102 B.R. 875

(N.D.Ga.1989); *Borintex Mfg. Corp. v. Banco Gubernamental de Fomento Para Puerto Rico*, 102 B.R. 8 (D.P.R.1989); *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.*, 97 B.R. 905 (N.D.Ill.1989); *In re Chiodo*, 88 B.R. 780 (W.D.Tex.1988); *In re Walsh*, 79 B.R. 28 (D.Nev. 1987); *In re Continental Holdings, Inc.*, 158 B.R. 442 (Bankr.N.D.Ohio 1993); *In re Bowen Corp., Inc. v. Security Pacific Bank Idaho*, 150 B.R. 777 (Bankr.D.Idaho 1993); *In re Baltic Assocs., L.P.*, 149 B.R. 93 (Bankr.E.D.Pa.1993); *In re Shop & Go, Inc.*, 124 B.R. 915 (Bankr.M.D.Fla.1991); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155 (E.D.N.Y.1986), *aff'd*, 1987 WL 47763 (E.D.N.Y.1987); *In re Candelero Sand & Gravel, Inc.*, 66 B.R. 903 (D.P.R.1986); *Zweygardt v. Colorado Nat'l Bank of Denver*, 52 B.R. 229 (Bankr.D.Col.1985).

and the motions for remand which ensued, no appreciable litigation or trial preparation has taken place. The considerations which supported the bankruptcy court's retention of jurisdiction in *In re Morris* are simply not present in this case. No judicial resources will be squandered and no unfairness or inconvenience will result to any of the parties if jurisdiction over Ms. Roddam's lawsuit is not retained. This Court, therefore, may not exercise jurisdiction over Ms. Roddam's lawsuit.[16]

No other colorable basis exists for bankruptcy jurisdiction over Ms. Roddam's lawsuit. Her cause of action is not the property of any bankruptcy estate under 11 U.S.C. § 541. Any damages that may be awarded as a result of the cause of action will belong solely to her. Neither the litigation of her lawsuit nor any recovery that might result from it will have an effect on the administration of any bankruptcy estate or alter the rights, liabilities, options or freedoms of any bankruptcy debtor, or in any manner impact on the handling or administration of any bankruptcy estate. But see note 2 above. Ms. Roddam's cause of action, therefore, "falls outside even the broad sweep of section 1334(b) related-to jurisdiction." *In re Boone*, 52 F.3d 958, 960 (11th Cir.1995). *See also, In re Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir.1990).

A cause of action in a civil action may be removed under 28 U.S.C. § 1452(a) only if the district court otherwise has jurisdiction over the cause of action under 28 U.S.C. § 1334. Since the district court does not have jurisdiction over Ms. Roddam's cause of action under section 1334, that cause of action is not subject to removal under section 1452(a) and must be remanded to the state court. *In re Baltic Assocs.*, 149 B.R. 93, 95 (Bankr.E.D.Pa.1993). *See also In re Fisher*, 151 B.R. 895, 897 (Bankr.N.D.Ill. 1993) (bankruptcy court did not have jurisdiction over non-debtor class members' state law claims).[17]

## (2) Abstention and Remand are Required even if Removal was Proper

Ms. Roddam's cause of action is based on the same facts, circumstances and state law as Mr. Roddam's cause of action. The same considerations discussed above in relation to Mr. Roddam's cause of action apply equally to Ms. Roddam's cause of action. Therefore, even if Ms. Roddam's lawsuit was properly removed under section 1452(a), this Court must abstain from hearing the lawsuit under sections 1334(c)(1) and 1334(c)(2) and remand the lawsuit back to state court under section 1452(b), for the same reasons this Court has abstained from hearing and remanded Mr. Roddam's lawsuit.

### F. Conclusion

Based on the foregoing discussion, the motions for abstention and remand filed on behalf of Mr. Roddam and Ms. Roddam, and the motion for remand filed by Mr. Pope, the chapter 7 trustee, must be granted. A separate order will be entered in accordance with this memorandum opinion.

---

**16.** Ms. Roddam's lawsuit, or her portion of the existing adversary proceeding, is not separately identified in this Court; consequently, this Court is unable to make a formal ruling on the jurisdictional questions surrounding Ms. Roddam's cause of action. In the usual case, an adversary proceeding pending after a bankruptcy case is dismissed will either be retained or dismissed. As a procedural matter, neither option is available here. This Court's remand of the lawsuit to state court and its refusal to recognize jurisdiction over Ms. Roddam's "law suit" is all that is available.

**17.** A finding that Ms. Roddam's cause of action must be remanded for lack of jurisdiction also bolsters this Court's decision to remand Mr. Roddam's cause of action. If Ms. Roddam's claim must be tried in state court, then holding a separate trial on the same issues in the district court will only waste judicial resources, result in the duplication of effort by all of the parties involved in the cases, and raise the specter of conflicting verdicts. On the other hand, one trial, in the state court which has jurisdiction over all of the parties, will avoid duplication, result in the conservation of judicial resources, and eliminate the possibility of conflicting verdicts.